Isaac D. Zorea
Law Office of Isaac Derek Zorea
P.O. Box 210434
Anchorage, AK 99521
(907) 644-2802
(800) 536-1071 facsimile

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| DERRICK M. HOLMES, )<br>)<br>Plaintiff, )<br>vs. )<br>)<br>MANIILAQ ASSOCIATION, )<br>)<br>Defendant. )<br>_____ ) | Case No. 2:21-cv- |

COMPLAINT FOR DAMAGES

COMES NOW Derrick M. Holmes, the plaintiff above named, by and through her attorney, Isaac Derek Zorea, and complains as follows:

## I. JURISDICTION

1.1. At all relevant times, plaintiff, Derrick M. Holmes, performed nursing duties for defendant operating out of Kotzebue, Alaska, within the Second Judicial District, State of Alaska.

1.2. At all relevant times, defendant, Maniilaq Association [Hereinafter: "Maniilaq"], has maintained significant business connections within the Second Judicial District, State of Alaska.

1.3. Venue properly rests within the Second Judicial District, State of Alaska.

## II. FACTS

2.1. Plaintiff Derrick M. Holmes initially began his employment with Defendant Maniilaq in 2018, working as a registered nurse and case manger at its Health Center in Kotzebue, Alaska.

2.2. Prior to working for Defendant, Mr. Holmes had worked over 20 years as a registered nurse, gaining substantial skills and experience.

2.3. During the course of his employment with Maniilaq, Mr. Holmes received no complaints from any of his patients, and ably performed his job duties.

2.4. Despite having significant nursing experience and skills, Mr. Holmes noticed that Defendant's Chief Nursing Officer (CNO), Jennifer Kranzman, treated him differently in the terms and conditions of his empoyment from how she treated his co-workers.

2.5. Derrick M. Holmes asserts that in addition to noticing the clear disparate treatment that he received from Defendant's CNO Ms. Kranzman, he learned, via text messaging from the Assistant Chief Nursing Officer, Terry Doughfman-Billings, that the reason he was being treated differently was because Kranzman did not like "black people."

2.6. Disappointed by the realization that his gut feeling that he was being discriminated against, Mr. Holmes appreciated the fact that Asst. CNO Doughfman-Billings had shared with him the fact that he was not just imagining discrimination. In fact, it was a clear and known fact among Defendant's upper management.

2.7. Concerned that CNO Kranzman's disparate treatment of him would lead to his eventual termination for made up charges, Mr. Holmes filed a complaint with Maniilaq's Human Resources Department and sent notice of his concerns to Defendant's board of directors.

2.8. After receiving his complaint of discrimination, Defendant's HR department told Mr. Holmes that it would resolve the perceived hostile work environment and ensure that discrimination would not occur.

2.9. Shortly after bring his concerns of discrimination to the attention of Defendant's HR Department, Derrick M. Holmes experienced retaliatory hostility from his co-workers who knew that he had filed a complaint against CNO Kranzman. The hostility significantly impacted Mr. Holmes' ability to perform his job, denying of the terms and conditions of his employment.

2.10. In September 2020, after experiencing an incident of harassment involving a co-workers yelling loudly at him and disrupting his ability to do his job, Mr. Holmes again went to Defendant's HR Department to gain assistance to resolve the disruptive and discrimination in his workplace. During this meeting, Mr. Holmes also brought to the attention of HR that he believed he was being paid less than his co-workers and that he believed this pay disparity was due to his discrimination based on his race.

2.11. After receiving Mr. Holmes second complaint, Maniilaq's HR Director scheduled a meeting for Holmes to attend. When Mr. Holmes showed up to the meeting, he learned that Maniilaq had decided to terminate his employment rather than resolve the retaliatory and discriminatory workplace within which he had been forced to work.

2.12. After his termination, Mr. Holmes filed a complaint with the EEOC, asking that it investigate his claims of wrongful termination. After reviewing Mr. Holmes complaint, the EEOC office issued him a Right to Sue letter. This lawsuit is being filed within the 90 days period provided for within the right to sue letter.

2.13. To date, Maniilaq has not corrected any pay disparity that occurred during the time of his employment.

2.14. The facts indicate that Maniilaq terminated Derrick M. Holmes due to discriminatory bias against him because he is an African-American. The facts also indicate that he was also terminated in part in retaliation for the fact that Mr. Holmes complained to Maniilaq's HR Department about the discrimination he was experiencing at work and that he was being paid less than his non-African American co-workers.

### CAUSES OF ACTION

**A. DISPARATE TREATMENT ON THE BASIS OF RACE IN VIOLATION OF 42 U.S.C. § 1981 AND 42 U.S.C. § 2000E-2(A).**

3.1. Derrick M. Holmes incorporates all the facts and allegations within the paragraphs listed above, 2.1 through 2.14, and alleges that defendant, Maniilaq Association, violated the both 42 U.S.C. § 1981 and 42 U.S.C. § 2000e-2(a).

3.2. Derrick M. Holmes alleges that at all times relevant to this lawsuit he was of African-American race, performed his job duties to the expectation of her employers, and the satisfaction of his patients, and received no progressive discipline or verbal counseling.

3.3. Derrick M. Holmes alleges that he experienced disparate treatment on the basis of his race, having received direct evidence that race was the reason for the disparate treatment he received from CNO Kranzman, and that with that information he filed a complaint with Maniilaq's HR department.

3.4. Plaintiff Derrick M Holmes alleges that despite assuring him that it would resolve the racially hostile work environment that Mr. Holmes was working in, Maniilaq's HR department failed to resolve the hostile working environment.

3.5. Plaintiff Derrick M. Holmes alleges that when he complained a second time to Maniilaq's HR department about the racially hostile work environment he endured, and also brought up the fact that he was paid less than his co-workers and alleged that it was because of his race, Maniilaq terminated his employment.

3.6. Plaintiff Derrick M. Holmes alleges that by the above conduct defendant Maniilaq violated Title VII of the Civil Rights Act of 1964, and also violated the Civil Rights Act of 1866, both of which prohibit discrimination, retaliation and inequality of pay based on race discrimination.

3.7. For Maniilaq's violations of the 42 U.S.C. § 2000e-2(a) and 42 U.S.C. § 1981, Plaintiff seeks all damages available under law, specifically back pay, future pay, emotional distress, loss of life enjoyment, loss of job opportunities, actual attorney fees and prejudgment interest.

3.8. Based on the egregious nature of Defendant's conduct, Plaintiff also seeks punitive damages from Maniilaq Association.

## PRAYER OF RELIEF

WHEREFORE, Plaintiff Derrick M. Holmes, requests judgment against defendant Maniilaq Association, as follows:

1. Full and complete payment of all back wages, future wages, prejudgment interest, emotional distress, loss of enjoyment of life, loss of advancement, and other permitted

damages caused when Maniilaq, treated him in a disparate manner because of his race, in violation of 42 U.S.C. § 1981 and 42 U.S.C. § 2000e-2(a), in amount within the jurisdictional limit of this court, with an exact amount to be proven at trial;

    2.    Based on the egregious nature of Maniilaq Association's conduct, Plaintiff Derrick M. Holmes also seeks punitive damages in the amount determined by the jury;

    3.    Actual reasonable attorney fees, pursuant to 42 U.S.C. § 1988, and all permitted prejudgment interests on the lost wages;

    4.    Plaintiff Derrick M. Holmes further seeks such other relief as the court may deem just and proper based on the egregious nature of Defendant's conduct.

Dated this 22nd day of November 2021.

    S/ Isaac Zorea
    Law Offices of Isaac D Zorea
    P.O. Box 210434
    Anchorage, AK 99521
    Telephone: (907) 830-1385
    Facsimile: (800) 536-1071
    E-mail: Eyedz@gci.net